UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:24-cr-00505-JAR |
| | ) |
| ANTHONY VIRDURE II, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, Anthony Virdure II ("Virdure"), through undersigned counsel, and hereby submits the following memorandum for sentencing:

**I.     Background**

On July 30, 2025, Defendant Anthony Virdure pled guilty to two counts of a four-count Indictment, Counts 1 and 4. *See* Presentence Report ("PSR") at ¶ 1. Count 1 charged Theft of Mail, in violation of 18 U.S.C. § 1708; Count 4 charged Wire Fraud, in violation of 18 U.S.C. § 1343. *Id*.

Defendant falls in criminal history category I with a Total Offense Level of 14, resulting in a guideline imprisonment range of 15 to 21 months.[1] PSR at ¶ 83. For the reasons detailed in this memorandum, Defendant Anthony Virdure respectfully suggests that a sentence of 6 months' imprisonment will best serve the statutory purposes of sentencing.

**II.     Sentencing Rules**

---

[1] The PSR initially miscalculated an additional criminal history point, resulting in a guidelines range of 18-24 months. Defendant filed objections to that calculation, and the U.S. Probation Office has since agreed with Defendant and represented that the final PSR will reflect the correct calculation of 15-21 months, although that correction has not yet been made as of the time of the instant filing.

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. There are four purposes of sentencing[2] and six factors to consider in connection with them.[3] The guidelines are only one factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

### III.    The Nature of the Offense

While employed at the United States Postal Service St. Louis Processing and Distribution Center, Virdure stole mail containing approximately 23 checks belonging to various individuals and businesses. PSR at ¶ 18. The checks totaled $68,486.31; however, none of the checks were ever deposited or cashed, meaning Virdure did not cause any actual loss to those intended recipients. *See id.*

As to Count 4, Virdure submitted false information in an application for a Paycheck Protection Program (PPP) loan during the Covid-19 pandemic. PSR at ¶ 20. Specifically, Virdure falsely represented, *via* wire communication, he was the sole proprietor of a tobacco store making $100,000 in gross income, inducing the issuance of a $20,832 loan to Virdure from the Small

---

[2] The purposes of sentencing are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2)(A)-(D).

[3] The factors to consider in connection with the purposes of sentencing are:

> (A)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (B)  the kinds of sentences available;
> (C)  the guidelines promulgated by the Sentencing Commission;
> (D)  any pertinent policy statement issued by the Sentencing Commission;
> (E)  the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
> (F)  the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

2

Business Administration (SBA). PSR at ¶ 23. Virdure has agreed to pay the entirety of that amount in restitution. PSR at ¶ 2.

### IV.    The Guidelines Overstate the Severity of Virdure's Offense Conduct

The intended loss amount from the stolen checks resulted in a significant 6-point enhancement towards Virdure's guidelines, and the quantity of victims (*i.e.*, the 23 intended recipients of the stolen checks) raised it by another 2 points, even though no actual loss was incurred by those individuals and businesses.[4] *See* PSR at ¶¶ 18, 27, 33-34. That is, Virdure's guidelines treat him the same as if he had taken the additional step of cashing all of the stolen checks and appropriating the almost $70,000.00 in proceeds. While Virdure does not contest the accuracy of the guidelines' loss calculation or the application of the victim enhancement, the Court should nevertheless consider this as a mitigating circumstance, given that Virdure never completed arguably the most important and harmful step, actually taking money from the victims.  Viewed in this light, the guidelines—which do not differentiate—overstate the severity of Virdure's conduct, warranting a downward variance. *See, e.g.*, *United States v. Huber*, 462 F.3d 945, 950–51 (8th Cir. 2006) (affirming downward departure based on defendant's small "net profit," because "the high value of the laundered funds led to a base offense level that substantially overstated the seriousness of the offense"). Absent those intended loss enhancements, Virdure's guidelines range would essentially be cut in half, down to Zone B with an advisory range of 6 to 12 months' imprisonment, which would render him a strong candidate for probation.

---

[4] Notably, the enhancement for 10+ victims typically would not apply under these circumstances, as Section 2B1.1's definition of "victim" includes only those persons who have suffered actual loss, not simply anyone whom a defendant intended to suffer loss. *See* USSG § 2B1.1, App. N. 1; *see United States v. Waldner*, 564 F. Supp. 2d 911, 933 (N.D. Iowa 2008), aff'd, 580 F.3d 699 (8th Cir. 2009). However, in the Mail Theft context, that definition is broadened to include intended recipients of undelivered mail. *See* USSG § 2B1.1, App. N. 4(C)(i).

Moreover, although it does not excuse Virdure's conduct by any means, it is worth noting that the PPP loan program was replete with fraud during this time period, at least in part due to the SBA's lack of oversight for the program. Indeed, in 2021, PPP loan fraud was "so widespread" that independent investigatory bodies were brought in to conduct audits and issue a fraud report. Halley Townsend, *Big Little Lies: How Loopholes in the Small Business Act Allow Large Businesses to Profit*, 79 Wash. & Lee L. Rev. Online 25, 56 (2022). It was determined that, as of December 2021, "the total amount stolen from the PPP was up to $100 billion." *Id*. That staggering loss amount was made possible by the rushed COVID-19 legislation that sought to dole out money as quickly as possible, ultimately sanctioning the issuance of billions of dollars in PPP loans without monitoring how the funds were used or who actually received them. *See id*. at 57-58. Consequently, Congress created an environment ripe for fraud. *Id*.

Taken in context, the ~$20,000 issued to Virdure represents only a drop in the bucket relative to the total loss incurred by the SBA from fraud during this same time period, at least $100 billion. Again, Virdure acknowledges that this, of course, does not excuse or justify his conduct, or render him any less guilty of the instant offense. Nevertheless, the relative degree of actual harm sustained by the victim is a factor that may be considered in varying downward, given it may result in an overstated guideline range. *See, e.g.*, *Huber*, 462 F.3d at 950–51; *see also United States v. Hoffman*, 901 F.3d 523, 563 (5th Cir. 2018), *as revised* (Aug. 28, 2018) (J. Dennis, concurring) (explaining, "The district court was entitled to, and did, consider that the economic reality differed greatly from the PSR's high loss calculation"; accordingly, "this lack of actual harm could reasonably warrant a downward variance"); *United States v. Campbell*, 738 F. Supp. 2d 960, 976 (D. Neb. 2010) (explaining, under different circumstances, "the lesser the harm to the victim the lesser the sentence, and the greater the harm to the victim the greater the sentence.").

4

In sum, although Virdure properly received a 6-point enhancement for a loss amount between $40,000 and $95,000 and another 2-point enhancement for 10+ victims, the only actual loss sustained by any victim was approximately $20,000 to the SBA. *See* PSR ¶ 27. However, the guidelines do not differentiate between Virdure and an offender who actually appropriated up to $95,000 from over 10 victims, nor do the guidelines account for the tumultuous circumstances surrounding the COVID-19 pandemic, the rushed legislation promulgating fraud, or the relative impact of the loss Virdure caused to the SBA in the greater context of the widespread fraud occurring during that time. Accordingly, Virdure's guidelines' computation substantially overstates the severity of his conduct, warranting a downward variance on this basis.

## V. Virdure's Personal Circumstances Should Be Considered in Reaching a Minimally Sufficient Sentence

Defendant Virdure's history and characteristics, including his supportive relationships and his modest criminal record, support a below-guidelines sentence. His immense support system is telling. To date, approximately twenty-five different members of Virdure's community have submitted sentencing letters and character references to undersigned counsel's office to show their support for Virdure. Although only a handful of such letters are attached hereto to avoid redundancy, the letters are from a wide variety of individuals Virdure has impacted throughout his life, including friends, family, colleagues, former teachers, former coaches, local business owners, among others. Each letter details the strong, admirable character Virdure possesses and the positive impact he has had in his community—as a mentor and role model to the special education students he teaches, to the athletes he coaches, and to his own children; as a supportive son and family member; as a hard-working, exemplary student-athlete who was both an honor's student and an

5

All American;[5] the list goes on. Suffice it to say, Virdure is a highly touted and well-respected member of his community, and remains so despite the mistakes he has made. As detailed in their letters, each of these individuals remain fully supportive of Virdure, and implore this Court to reach a minimal sentence. *See attached* Sentencing Letters.

Virdure also has minimal criminal history, falling into criminal history category I with only one criminal history point from a misdemeanor offense for which he received a suspended imposition of sentence. PSR at ¶¶ 47, 51.

Sentencing courts have considered factors such as strong family support and minimal criminal history in varying downward. *See United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (downward variance to five years of probation for racketeering, in part, because defendant came from a close-knit family and community and was, therefore, a good candidate for rehabilitation); *United States v. Wachowiak*, 412 F. Supp. 2d 958, 964 (E.D. Wis. 2006), aff'd, 496 F.3d 744 (7th Cir. 2007) (imposing a sentence below the guidelines, in part, because of the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1110 (N.D. Iowa 2009) (considering the show of support from defendant's family, suggesting he will have support in his efforts at rehabilitation, in granting a motion for downward variance).

Defendant Virdure's supportive family and community, and his minimal criminal history, should be taken into consideration in determining a minimally sufficient sentence.

## VI.    Defendant Virdure Poses a Reduced Risk of Recidivism

United States Sentencing Commission data supports the conclusion that Virdure poses a reduced risk of recidivism, as compared with other offenders, and suggests that a sentence variance

---

[5] To honor his collegiate accomplishments, Virdure was inducted into the Lincoln University Hall of Fame in 2023, a prestigious honor the LU community holds in high regard.

that minimizes any sentence of incarceration is appropriate in this case. *See, e.g.,* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* U.S.S.G. § 4A1.1. Virdure has never served a period of incarceration, which the PSR indicates may warrant a downward variance in itself. PSR at ¶ 104.

Moreover, recidivism rates decline consistently as the defendant's age increases. *Measuring Recidivism* at 12, 28. Offenders under 21 years old recidivate at a rate of 35.5%. *Id*. at 28. In comparison, offenders in criminal history category I between the ages of 31 to 35 recidivate at the rate of 14.6%. *Id*. Virdure is currently 31 years old with a criminal history category I. *See* PSR Identifying Data; PSR at ¶ 49.

Educational attainment also correlates with lower recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have not graduated from high school recidivate at a rate of 21.3%. *Id.* at 29. By contrast, those who have college degrees recidivate at a rate of 7.1%. *Id.* Virdure earned his Bachelor's Degree at Lincoln University, where he graduated with honors and was distinguished as a member of the Lincoln University Hall of Fame. PSR at ¶ 49; PSR Identifying Data; *see attached* Sentencing Letters.

These factors indicate Defendant Virdure poses a lower risk of recidivism and, as such, is a good candidate for a sentence that minimizes any term of incarceration.

### VII.    A Downward Variance is Appropriate to Avoid Unwarranted Sentencing Disparities Among Similar Offenders

Offenders in a similar position to Virdure's ordinarily receive a below-guidelines sentence. From 2020 through 2024, more than half of all offenders (60%) sentenced under USSG § 2B1.1 who fell within the same guidelines range as Virdure received a downward departure or variance. *See* USSC, Judiciary Sentencing INformation (JSIN), available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Oct. 18, 2025). The average sentence imposed for all such offenders who received a sentence of imprisonment during that same timeframe, including those who did not receive a downward variance, was 10 months. *See id*. However, a significant portion of such offenders, approximately 22%, received no sentence of imprisonment at all. *Id.*

Thus, to avoid unwarranted sentencing disparities among similarly situated offenders, this Court should impose a below-guidelines sentence, especially in light of the circumstances described above that independently warrant a downward variance.

## VIII.  Conclusion

For the foregoing reasons, Virdure respectfully requests the Court grant an initial downward variance from the low-end of his guidelines to a sentence of 10 months, the average sentence received by similarly situated offenders, to avoid unwarranted sentencing disparities. From there, Virdure then requests the Court grant an additional variance down to a total sentence of 6 months' imprisonment, considering Virdure's overstated guidelines range, his immense community support, his lack of criminal history, his unique personal history and characteristics, and his reduced risk of recidivism.

Thus, Defendant Anthony Virdure II respectfully requests this Court impose a sentence of 6 months' imprisonment, followed by a three-year term of supervised release.

Respectfully Submitted,

ROSENBLUM, SCHWARTZ, FRY & JOHNSON, PC

By:    /s/   *Jeff B. Becker*
        JEFF B. BECKER, #74560MO
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332/Facsimile (314)862-8050
        jbecker@rsfjlaw.com

## CERTIFICATE OF SERVICE

Signature above is also certification that a true and correct copy of the foregoing has been electronically filed this 20th day of October, 2025 to be served by operation of the Court's electronic filing system

9